UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE EDMONDS INSTITUTE<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR<br><br>Defendant. | Civil Action No.  04-1560 (JDB) |

## MEMORANDUM OPINION & ORDER

The Edmonds Institute ("Edmonds") is a non-profit organization whose mission is the maintenance and protection of ecosystems and their inhabitants.  Edmonds brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the release of certain documents from the National Park Service ("NPS") at the Department of the Interior ("DOI") relating to the NPS's proposal to enter into "benefits sharing" agreements with private parties permitting the collection and commercial use of biological materials from national parks.

The DOI has filed a motion for summary judgment, to which it has attached a Vaughn index listing the documents it has withheld or redacted.  Edmonds has filed a cross-motion for summary judgment, arguing that the DOI was wrong to withhold certain communications between the agency and an outside contractor under Exemption 5 of FOIA; used an improper cut-off date for the search for and release of documents; failed to submit an adequate Vaughn index and provide all segregable portions of released documents; and violated the Administrative Procedure Act ("APA") by delaying a response to Edmonds' FOIA request for more than the twenty days

-1-

specified in the statute.

For the reasons stated below, the Court grants in part and denies in part the parties' respective motions, ordering the DOI to submit a more complete Vaughn index before the Court turns to the Exemption 5 question, but rejecting the contentions that the DOI used an invalid cut-off date and violated the APA.

**I.      Vaughn Index and Segregability**

Congress enacted the FOIA "to open up the workings of government to public scrutiny through the disclosure of government records." Stern v. FBI, 737 F.2d 84, 88 (D.C. Cir. 1984) (quotation omitted).  In so doing, however, Congress acknowledged that "legitimate governmental and private interests could be harmed by release of certain types of information." Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 872 (D.C. Cir. 1992).  Accordingly, FOIA recognizes nine exemptions pursuant to which an agency may withhold requested information.  5 U.S.C. § 552(a)(4)(B) & (b)(1)-(9).

When an agency withholds information pursuant to a FOIA exemption, it usually must produce a "Vaughn index," a description of the records, or portions of records, withheld by the agency.  See Vaughn v. Rosen, 484 F.2d 820, 827 (D.C. Cir. 1973); Coldiron v. United States Dep't of Justice, 310 F. Supp. 2d 44, 46 (D.D.C. 2004).  The defendant must include in the Vaughn index "a description of each document being withheld, and an explanation of the reason for the agency's nondisclosure." Oglesby v. United States Dep't of Army, 79 F.3d 1172, 1176-77 (D.C. Cir. 1996).  The index must provide "as much information as possible without thwarting the [asserted] exemption's purpose." King v. United States Dep't of Justice, 830 F.2d 210, 224-25

(D.C. Cir. 1987).[1]

Once the agency identifies a document that it believes falls within an exemption, it must undertake a "segregability analysis," in which it separates the exempt from the non-exempt portions of the document, and produces the relevant non-exempt information. See Vaughn, 484 F.2d at 825 ("[A]n entire document is not exempt merely because an isolated portion need not be disclosed. Thus the agency may not sweep a document under a general allegation of exemption, even if that general allegation is correct with regard to part of the information."). The Vaughn index should contain a description of the segregability analysis, explaining "in detail which portions of the document are disclosable and which are allegedly exempt." Id. at 827; see King, 830 F.2d at 224 (quotation omitted) (agency should provide a "relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply"). "A submission that does not do that does not even qualify as a 'Vaughn index.'" Schiller v. NLRB, 964 F.2d 1205, 1210 (D.C. Cir. 1992).

The materials that the DOI submitted in this case fall short of this standard. The DOI has produced a table listing, for each document, the sender, the recipient, a brief characterization of

---

[1] A detailed description of the withheld documents is of particular importance in a case such as this, where the agency is claiming that the documents are protected by the deliberative process privilege under Exemption 5. See, e.g., Defenders of Wildlife v. United States Dep't of Agriculture, 311 F. Supp. 2d 44, 59 (D.D.C. 2004) ("The defendants' principal overarching problem is that they do not provide an individualized description of any of the documents, despite the D.C. Circuit's emphasis on the individualized nature of the deliberative-process inquiry."); Animal Legal Defense Fund, Inc. v. United States Dep't of Air Force, 44 F. Supp. 2d 295, 299 (D.D.C. 1999) ("The need to describe each withheld document when Exemption 5 is at issue is particularly acute because 'the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process.'" (quoting Coastal States Gas Corp. v. United States Dep't of Energy, 617 F.2d 854, 867-68 (D.C. Cir. 1980)).

the nature of the document (a typical listing is "Email re: draft text"), and a number corresponding to one of eight categories of documents set out in the accompanying declaration of an NPS official. All but one of the documents remaining in dispute are labeled as Category 1,[2] which the declaration describes only as consisting of "e-mails among Department and other agency personnel, including contractors and consultants, commenting on the development of the Benefits-Sharing EIS."[3] Decl. of Susan Mills ("Mills Decl."), Nov. 10, 2004, ¶ 10. The declaration provides a more detailed description for six of the withheld Category 1 documents, but none of the others.[4] The submissions also do not tailor the exemption claim to a particular portion of each of the withheld documents, even failing to describe whether a document was withheld in part or in full. The DOI relies for its segregation analysis on a single paragraph in the declaration that states that the withheld documents were evaluated for segregability and that

> reasonably segregable factual material has been released whenever possible, unless such factual information is inextricably intertwined with deliberative communications, or where the drafter's selection of which factual material to include in the document would indicate the nature of the deliberative communication.

Mills Decl. ¶ 20.

These materials are deficient in two respects, each of which the DOI should remedy in a new Vaughn index. First, the DOI must provide a brief but sufficiently detailed description of

---

[2] A single document apparently in dispute is labeled as Category 2, which the declaration explains is an "email . . . from a contractor to an NPS employee" that "provides a revision of an existing MTA [Material Transfer Agreement] with a third party." Id. ¶ 12.

[3] The declaration uses "EIS" as a shorthand for Environmental Impact Statement.

[4] For instance, the declaration states that "the document identified as Vaughn index No. 52, sent to the team drafting the EIS, provides section-by-section comments to a draft of the Benefits-Sharing EIS." Id.

thecontent of each document it continues to withhold under Exemption 5. See Oglesby v. Dep't of the Army, 920 F.2d 57, 67 n.12 (D.C. Cir. 1990) (agency must provide "detailed description of each document withheld"). The description need not be long, but should include something more than the nature of the document in question (*i.e.*, e-mail, report) and its title.[5] The description of a sample of the documents that the DOI provided in its declaration is sufficient, and could serve as a model. See supra note 4. The DOI is welcome to continue to group documents into categories in order to explain its *rationale* for withholding documents. See Maydak v. United States Dep't of Justice, 218 F.3d 760, 763 (D.C. Cir. 2000). The index nonetheless should contain a short description of the *content* of each individual document, sufficient to allow Edmonds and this Court to test the claim that the particular document (or portion of a document) comes within Exemption 5. See Spirko v. United States Postal Service, 147 F.3d 992, 996 (D.C. Cir. 1998) (description should be sufficiently "detailed to permit meaningful review of exemption claims").[6]

---

[5] A detailed description of each document is unnecessary where it would be repetitive or would reveal the exempt information the agency is attempting to withhold. See, e.g., Judicial Watch, Inc. v. United States Dep't of Energy, 310 F. Supp. 2d 271, 310 (D.D.C. 2004), rev'd in part on other grounds, 412 F.3d 125 (D.C. Cir. 2005). There is no claim that either situation can explain the failure of the agency to describe its documents in greater detail here.

[6] The DOI has withheld the documents at issue in this action pursuant to the deliberative process privilege under Exemption 5. Edmonds has challenged the withholding not on the ground that the documents are post-decisional or factual (the usual bases for contesting a claim of deliberative process privilege), but instead on the ground that the documents are communications with an outside organization and therefore not "intra-agency" documents within the meaning of Exemption 5. The DOI responds that the outside organization is a private contractor of the agency and therefore the communications with the organization are "intra-agency" under the rule of Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1 (2001).

The Court will not, at this time, require the DOI to provide more information to determine whether the outside organization was in fact acting as a private contractor. The Vaughn index, with its focus on the content of individual documents rather than the nature of the relationship among the relevant parties, does not seem well-suited to this task. The Court nonetheless

Second, the new index should connect the claimed exemption to the relevant withheld portions of each document, and explain whether there is any information that can be segregated as non-exempt from the rest of the document. See Schiller, 964 F.2d at 1209-10 ("Rather than asserting that certain exemptions apply to certain documents, the Board should have correlated the theories of exemptions with the particular textual segments which it desired exempted."). Where the agency believes the entire document is covered by Exemption 5, it should so state. The generalized paragraph on segregability in the Mills declaration does not alone suffice. One court recently described an almost identical section of a declaration as "patently insufficient" to meet an agency's obligation to segregate, and this Court agrees. Animal Legal Defense Fund, 44 F. Supp. 2d at 301; see King, 830 F.2d at 219 (Vaughn index and supporting affidavit "cannot support summary judgment if they are conclusory, merely reciting statutory standards, or if they are too vague or sweeping").

The Court will therefore direct the DOI to produce a more detailed Vaughn index. See Schiller, 964 F.2d at 1209 (rejecting Vaughn index where the "index does not correlate the claimed exemptions to particular passages in the memos" and the "agency affidavit similarly refers to entire documents and not any passages within them"). The Court will allow the DOI thirty days from the date of this order to submit a renewed index. Because the very purpose of the Vaughn index is to produce the information necessary for the requester to challenge -- and a court

---

anticipates that the information contained in a more complete Vaughn index will not only allow Edmonds to determine whether it should object to withholding of any of the documents (or portions of documents) as post-decisional or factual, but will also shed some additional light on the role played by the outside organization in its relationship with the DOI. See Animal Legal Defense Fund, 44 F. Supp. 2d at 303 ("[A] proper affidavit and Vaughn index will allow the ALDF to respond intelligently to the Air Force's claimed exemptions.").

to conduct a meaningful review of -- the claimed exemptions, the Court will defer consideration of the Exemption 5 arguments in this case until such time as the DOI has submitted a revised Vaughn index.  See Schiller, 964 F.2d at 1210 ("[I]t is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof."); Electronic Privacy Information Ctr. v. Dep't of Homeland Sec., No. 04-0944, 2005 WL 1745303, at *5 (D.D.C. July 25, 2005) (explaining that a "court cannot grant summary judgment unless the defendant's Vaughn index provides a detailed description of the withheld information").  The parties will then each have the opportunity to file renewed dispositive motions.[7]

## II.    Cut-off Date

Edmonds contends that the DOI erred in declining to produce any documents created after December 31, 2002.  However, the governing regulation provides that, when responding to a FOIA request, the DOI will "include any records in its possession and control as of the date it begins its search."  43 C.F.R. § 2.21.  The DOI has submitted a declaration from an official at the NPS averring that the search for documents in this case began no later than December 31, 2002.  Supp. Decl. of Susan Mills, Jan. 26, 2005, ¶ 3.  Thus, the DOI chose a date no earlier than the date-of-search as the cut-off date for the production of documents, consistent with its own

---

[7] Edmonds has moved for an in camera review of a substantial number of the withheld documents.  The D.C. Circuit has consistently emphasized that "a district court should not undertake in camera review of withheld documents as a substitute for requiring an agency's explanation of its claimed exemptions in accordance with Vaughn." Spirko, 147 F.3d at 997.  The preferred path, and the one the Court will follow in this case, is for the agency to produce the information required in the normal course of any FOIA case through the mechanism of a Vaughn index.  If the agency fails to provide enough information in a revised Vaughn index to "enable the district court to make a de novo determination of the agency's claims of exemption, the district court then has several options, including inspecting the documents in camera, requesting further affidavits, or allowing the plaintiff discovery." Animal Legal Defense Fund, 44 F. Supp. 2d at 303.

regulations.

Edmonds argues that the DOI should instead have used the date the documents were released as the cut-off date (in this case, February 20, 2004). This proposal, however, is inherently flawed, leading as it would to an ever-moving target for the production of documents under FOIA. Every postponement in the release of the documents would require the agency to perform a new search to include all documents created before the new release date, which in turn would postpone the date of release once again. This result is both inefficient and uncertain, and the Court sees no reason to adopt it here.[8] The D.C. Circuit has all but endorsed the use of date-of-search as the cut-off date for FOIA requests. See Public Citizen v. Dep't of State, 276 F.3d 634, 642 (D.C. Cir. 2001) (rejecting the use of the date of the FOIA request as a cut-off in that case, explaining that "[a]t the very least, we think that with minimal administrative hassle, the Department could apply a date-of-search cut-off to the Central File"). Under the date-of-search approach, Edmonds can, with relative ease, file a second FOIA request for documents created since December 31, 2002. In the meantime, the fair and sensible outcome is for the DOI to produce the documents created up to that date, which is precisely what it has done.

### III.   Administrative Procedure Act

Edmonds finally contends that it is entitled to a declaratory judgment that the DOI acted contrary to law in violation of the APA when it failed to respond to Edmonds' FOIA requests within the twenty working dates required by statute. 5 U.S.C. § 552(a)(6)(A)(i)&(ii). The law is clear, however, that review under the APA is unavailable when another statute provides an

---

[8] The agency's declarant explains that although it commenced the "voluminous" search for the requested documents shortly after receiving the request, "the Yellowstone staff did not have the capacity to adequately process the documents until early 2004." Supp. Mills Decl. ¶ 5.

adequate remedy.  See Bowen v. Massachusetts, 487 U.S. 879, 903 (1988); Women's Equity Action League v. Cavazos, 906 F.2d 742, 750 (D.C. Cir. 1990); Council of and for the Blind of Delaware Cty. Valley, Inc. v. Regan, 709 F.2d 1521, 1531 (D.C. Cir. 1983).

The FOIA statute offers a clear and simple remedy for agency non-compliance with the FOIA deadlines:  a motion asking the court to compel the agency to act on the FOIA request.  See 5 U.S.C. § 522(a)(4)(B) (district court has "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant"); see also Oglesby, 920 F.2d at 63 (purpose of the FOIA deadline provisions "is to allow a FOIA requester, who has not yet received a response from the agency, to seek a court order compelling the release of the requested documents," at which point the "court may then order the agency to respond to the request" or "review the request itself").  Edmonds does not explain how this remedy is inadequate, or why Edmonds cannot avail itself of this remedy the next time the DOI fails to adhere to the deadlines under FOIA.[9]  In these circumstances, a separate action is unavailable under the APA.[10]

---

[9] Edmonds explained at the hearing that it believes an order under the APA would send a message to the DOI that it is acting in violation of law.  However, if the DOI again fails to act within the prescribed statutory deadlines, an order under section 522(a)(4)(B) would presumably send the same message.  Until such time as Edmonds is seeking the concrete remedy of agency action on its request, a declaratory judgment action is not the favored course.  See United Christian Scientists v. Christian Sci. Bd. of Dirs., 829 F.2d 1152, 1159 n.25 (D.C. Cir. 1987) (party seeking declaratory judgment must show that it has "suffered some actual or threatened injury" that "fairly can be traced to the challenged action" and is "likely to be redressed by a favorable decision").

[10] At any rate, the APA appears to provide precisely the same remedy.  See 5 U.S.C. § 706(1) (authorizing a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed").  Here, the DOI has acted on the FOIA request, and so nothing more could be gained from an action under the APA.  Edmonds does not cite a single case, and the Court is unaware of any, where a court has awarded relief other than compelling an agency to act when a

**CONCLUSION**

The parties' cross-motions for summary judgment are GRANTED in part and DENIED in part.  The DOI shall submit a revised Vaughn index by not later than September 22, 2005.  The parties shall file renewed cross-motions for summary judgment by not later than October 24, 2005, responses thereto by not later than November 23, 2005, and any replies by not later than December 7, 2005.

SO ORDERED.

        /s/ John D. Bates
        JOHN D. BATES
        United States District Judge

Dated:   August 23, 2005

---

plaintiff charges that the agency has failed to act before a statutory deadline.  See Office of Foreign Assets Controls v. Voices in the Wilderness, No. 03-1356, 2005 WL 1939169, at *5 (D.D.C. Aug. 12, 2005) ("The prevailing rule is that a claim that an agency has failed to comply with a statutory or regulatory deadline can give rise to an action to compel the agency to act under section 706(a)(1), but usually cannot support a claim to set aside the agency action under section 706(a)(2).").