## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE EDMONDS INSTITUTE,

    Plaintiff,

      v.                           Civil Action No. 04-1560  (JDB)

U.S. DEP'T OF INTERIOR,

    Defendant.

### MEMORANDUM OPINION

    In this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, plaintiff

The Edmonds Institute ("Edmonds" or "the Institute") and defendant United States Department of

Interior ("DOI") have both filed renewed motions for summary judgment.  The motions raise two

discrete issues.  First, the Institute challenges DOI's decision to withhold from disclosure all or

part of nineteen documents pursuant to the deliberative process privilege.  Second, the Institute

claims that it is entitled to a waiver of FOIA processing fees.  For the reasons explained herein,

the Court finds that Edmonds is not entitled to disclosure of the nineteen documents but has

satisfied the requirements for a public-interest fee waiver.  Plaintiff's and defendant's respective

motions are therefore granted in part and denied in part.

### BACKGROUND

    Edmonds is a non-profit organization that describes itself as providing information to the

public concerning the use of microbiological resources found on federal land.  See Decl. of Susan

Mills ("Mills Decl.") Ex. A ("October 2002 FOIA Request") at 5.  At issue in this case are two

FOIA requests filed by Edmonds with DOI in October 2002 and August 2005.  In both requests,

Edmonds seeks access to documents created by DOI and the National Park Service ("NPS"),

which is part of DOI, that relate to "benefits-sharing agreements" between the NPS and private-

sector biotechnology researchers.  These agreements govern the distribution of monetary and

other "benefits" resulting from the private commercial development of research derived from

specimens collected in national parks.  See generally Edmonds Inst. v. Babbitt, 42 F. Supp. 2d 1,

4-9 (D.D.C. 1999) (describing history of benefits-sharing agreements).  At this time, benefits-

sharing agreements are the focus of a pending environmental impact statement ("EIS"), a draft of

which was issued by the NPS in September 2006.  See NPS, DOI, Servicewide Benefits-Sharing

Draft Environmental Impact Statement (2006) ("DEIS"); see also Edmonds Inst., 42 F. Supp. 2d

at 20 (ordering review under National Environmental Policy Act, 42 U.S.C. §§ 4321-4370e

("NEPA"), of benefits-sharing agreement between Yellowstone National Park and Diversa

Corporation).  Because the debate over the relative advantages and disadvantages of these

agreements is not relevant to the parties' pending motions, the Court now turns to the particulars

of the Institute's FOIA requests.

1.      **The October 2002 FOIA request**

        Edmonds submitted its first FOIA request relevant to this case on October 15, 2002.   In

the request, Edmonds asked for information related to benefits-sharing agreements and/or the

commercial use or appropriation of biological material from national parks appearing in

documents created between June 7, 2002, and the date of DOI's response.  October 2002 FOIA

Request.  In early 2004, DOI provided Edmonds with approximately 381 pages of responsive

information and a list of documents that were withheld or redacted.  Mills Decl. ¶ 5.

        Edmonds instituted this action in September 2004, and shortly thereafter both parties filed

2

motions for summary judgment.  In support of its motion, DOI submitted a Vaughn index listing

283 documents that it considered exempt from FOIA disclosure.[1]  Def.'s Mot. Summ. J. Ex. 2

(Vaughn Index).  Edmonds filed a cross-motion for summary judgment that, among other things,

objected to DOI's production cut-off date and its invocation of FOIA Exemption 5 to withhold

certain documents.  In an August 23, 2005, Memorandum Opinion & Order, this Court granted in

part and denied in part the parties' respective motions.  See Edmonds Inst. v. U.S. Dep't of

Interior, 383 F. Supp. 2d 105 (D.D.C. 2005).  DOI was ordered to submit a revised Vaughn index

that provided a more detailed description and segregability analysis of each withheld document.

Id. at 109-10.  The Court also rejected the Institute's challenge to the use of a December 31, 2002,

cut-off date for document production and noted that Edmonds could file an additional FOIA

request for documents created after that date.  Id. at 111.

DOI has now submitted a revised Vaughn index in support of its renewed motion for

summary judgment.  Edmonds has also filed a renewed cross-motion for summary judgment.

The Institute continues to object to DOI's invocation of Exemption 5, but only as to the contents

of nineteen documents that it argues contain segregable facts not covered by the deliberative

process privilege.  Edmonds has foregone all other previously made arguments with respect to its

October 2002 FOIA request.  Suppl. Decl. of Beth Burrows ¶ 4.

## 2.    The August 2005 FOIA request

Edmonds filed its second relevant FOIA request on August 25, 2005.  That request asked

---

[1]A Vaughn index is a description of records, or portions of records, withheld by the
agency in response to a FOIA request, along with an explanation of the reason for the agency's
nondisclosure.  See Vaughn v. Rosen, 484 F.2d 820, 827 (D.C. Cir. 1973); Oglesby v. U.S. Dep't
of Army, 79 F.3d 1172, 1176-77 (D.C. Cir. 1996); Edmonds Inst. v. U.S. Dep't of Interior, 383 F.
Supp. 2d 105, 107 (D.D.C. 2005).

for "copies of all more recent documents and records responsive to our client's previous FOIA

request of October 15, 2002 . . . for the time period of 12/24/02 to the present."  Decl. of Diane

Cooke ("Cooke Decl.") Ex. A ("August 2005 FOIA Request").  DOI has not yet processed this

request because Edmonds declined to pay the processing fees once its application for a public-

interest fee waiver was denied.  Cooke Decl. ¶ 8.  In its August 2005 request, Edmonds claimed a

fee waiver was warranted "for all of the reasons set forth in [the] October 15, 2002 FOIA request

referenced above, which is incorporated by reference herein."  August 2005 FOIA Request.  DOI

responded with a letter asking Edmonds for a copy of the earlier request.  See Cooke Decl. Ex. B.

at 1.  Edmonds complied and also submitted a letter to DOI providing further support for a fee

waiver.  See Cooke Decl. Ex. C. ("September 2005 Waiver Request Letter").

       DOI denied the fee waiver in October 2005, finding that Edmonds failed to demonstrate

that release of the requested documents would be in the public interest, as required by FOIA.  See

5 U.S.C. § 552(a)(4)(A)(iii); Cooke Decl. Ex. D ("Waiver Denial Letter").  Edmonds

administratively appealed in November 2005.  See Cooke Decl. Ex. E ("Letter Appealing Waiver

Denial").  Before DOI issued a decision on the appeal, Edmonds amended its complaint in this

action to include claims based on the fee-waiver denial.[2]  Cooke Decl. ¶ 7.  In their respective

motions for summary judgment, the parties now disagree as to whether Edmonds sufficiently

demonstrated that disclosure of the documents would contribute significantly to the public's

---

       [2]Edmonds amended its complaint on February 8, 2006, well after expiration of the
twenty-day period provided for agency determination of an administrative FOIA appeal.  See 5
U.S.C. § 552(a)(6)(A)(ii).  Edmonds has therefore exhausted its administrative remedies with
respect to this claim.  See id. § 552(a)(6)(C); Oglesby v. U.S. Dep't of Army, 920 F.2d 57 (D.C.
Cir. 1990) (applying administrative exhaustion requirements of § 552(a)(6) to denials of fee-
waiver requests).

understanding of government operations or activities.

## <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  The moving party may successfully support its motion by "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, 'which it believes demonstrate the absence of a genuine issue of material fact.'"  <u>Id.</u> (quoting Fed. R. Civ. P. 56(c)).

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position.  <u>Id.</u> at 252.  By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment.  <u>Celotex</u>, 477 U.S. at 322.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  <u>Anderson</u>, 477 U.S. at 249-50 (citations omitted).  Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]."  <u>Id.</u> at 252.

In a FOIA case, the Court may award summary judgment solely on the basis of

5

information provided by the department or agency in affidavits or declarations that "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1973). Agency affidavits or declarations must be "relatively detailed and non-conclusory," and are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Servs. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and internal quotation marks omitted). The district court conducts *de novo* review of an agency's determination that requested information is subject to a statutory exemption under FOIA. 5 U.S.C. § 552(a)(4)(B). The district court also reviews *de novo* an agency's denial of a FOIA fee-waiver request; however, its review is limited to the record before the agency. Id. § 552(a)(4)(A)(vii).

## ANALYSIS

Two discrete issues are presented by the parties' cross-motions for summary judgment. With respect to the Institute's first FOIA request, the Court must decide whether information contained in the nineteen challenged documents is exempt from disclosure pursuant to the deliberative process privilege that comes within FOIA Exemption 5. As to the second FOIA request, the Court must determine whether Edmonds is entitled to a public-interest fee waiver.

**1.**   **Are the documents sought by Edmonds protected from disclosure under the deliberative process privilege?**

   **a. The deliberative process privilege**

Generally speaking, FOIA provides for the release upon request of agency-created documents that do not otherwise fall within one of nine statutory exemptions.  5 U.S.C. § 552(a)(3), (b)(1)-(9); see also NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 136 (1975) ("[T]he Act seeks 'to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.'" (quoting S. Rep. No. 89-813, at 3 (1965))).  The agency has the burden of establishing that information falls within a statutory exemption. § 552(a)(4)(B); Petroleum Info. Corp. v. U.S. Dep't of Interior, 976 F.2d 1429, 1433 (D.C. Cir. 1992).  Under Exemption 5, disclosure is not required for "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  § 552(b)(5).  Exemption 5 encompasses civil discovery privileges, including a "deliberative process" privilege that protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001); Sears, Roebuck & Co., 421 U.S. at 150.

The deliberative process privilege serves several important functions.  Most importantly, the privilege "enhance[s] the quality of agency decisions by protecting open and frank discussion among those who make them within the Government."  Klamath, 532 U.S. at 9 (citation and internal quotation marks omitted).  In particular, it "assure[s] that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980); see also Tax Analysts v. IRS, 117 F.3d 607, 617 (D.C. Cir. 1997) ("Exemption 5, and the deliberative process privilege, reflect the legislative

judgment that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fishbowl . . . ." (internal quotation marks omitted)).  The privilege also protects against the release of information that would "inaccurately reflect or prematurely disclose the views of the agency," Coastal States Gas Corp., 617 F.2d at 866, thereby preventing public confusion and safeguarding the integrity of the decisionmaking process itself. See, e.g., Petroleum Info. Corp., 976 F.2d at 1433 n.5; Jordan v. Dep't of Justice, 591 F.2d 753, 772-73 (D.C. Cir. 1978) (en banc), overruled in part on other grounds, Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051 (D.C. Cir. 1981) (en banc).

Only information that is both predecisional and deliberative is protected by the deliberative process privilege.  Petroleum Info. Corp., 976 F.2d at 1434.  Information is considered "predecisional if it was generated before the adoption of an agency policy and deliberative if it reflects the give-and-take of the consultative process." Judicial Watch, Inc. v. FDA, 449 F.3d 141, 151 (D.C. Cir. 2006) (internal quotation marks omitted).  Application of the deliberative process privilege is necessarily "dependent upon the individual document and the role it plays in the administrative process." Coastal State Gas Corp., 617 F.2d at 867; see also Wolfe v. Dep't of Health & Human Servs., 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc) (assessing deliberative nature of "information requested in light of the policies and goals that underlie the deliberative process privilege").

**b.  Application of the privilege to the contested documents**

Edmonds challenges DOI's assertion of the deliberative process privilege over information contained in nineteen documents.  For each of these documents, Edmonds raises the same objection: the information it seeks is both purely factual (and therefore not deliberative)

8

and segregable from any deliberative material contained in the documents.

The distinction between fact and opinion does operate as a "rough guide to separate exempt from non-exempt material" under the deliberative process privilege.  Access Reports v. Dep't of Justice, 926 F.2d 1192, 1195 (D.C. Cir. 1991); see also EPA v. Mink, 410 U.S. 73, 91 (1973) (noting that Exemption 5 allows discovery of purely factual material "that is severable without compromising the private remainder of the documents").  "The fact/opinion distinction, however, is not always dispositive; in some instances, 'the disclosure of even purely factual material may so expose the deliberative process within an agency' that the material is appropriately held privileged."  Petroleum Info. Corp., 976 F.2d at 1434 (quoting Mead Data Cent., Inc. v. Dep't of Air Force, 566 F.2d 242, 256 (D.C. Cir. 1977)); see also Judicial Watch, Inc. v. Dep't of Justice, 432 F.3d 366, 372 (D.C. Cir. 2005) (stating that factual material "inextricably intertwined" with deliberative material falls within privilege).  A district court must therefore consider whether the factual material "bear[s] on the formulation or exercise of agency policy-oriented judgment."  Petroleum Info. Corp., 976 F.2d at 1435.

Although application of the deliberative process privilege is context-specific, past cases provide some guidance as to when factual information embodies agency judgment.  See generally id. at 1435 n.6 (collecting cases).  For example, the D.C. Circuit has held that preliminary drafts of historical documents are exempt from disclosure when a comparison of the drafts with the final products would reveal editorial changes made by the agency.  See Dudman Commc'ns v. Dep't of Air Force, 815 F.2d 1565, 1567-68 (D.C. Cir. 1987) (exempting drafts of official Air Force histories); Russell v. Dep't of Air Force, 682 F.2d 1045, 1049 (D.C. Cir. 1982) (same).  Likewise, agency-created summaries of voluminous source materials reflect the editorial

judgment necessary to "cull the relevant documents, extract pertinent facts, organize them to suit a specific purpose, and to identify the significant issues . . . encountered along the way." Mapother v. Dep't of Justice, 3 F.3d 1533, 1538 (D.C. Cir. 1993) (exempting historical report of Kurt Waldheim's World War II activities, including summaries and indexes of source material); Montrose Chem. Corp. v. Train, 491 F.2d 63, 68 (D.C. Cir. 1974) (exempting summaries of approximately 10,000-page administrative record). Numerical and other non-narrative data has also been withheld when its collection or analysis reflects the exercise of policy-related judgment.  Compare Quarles v. Dep't of Navy, 893 F.2d 390, 392-93 (D.C. Cir. 1990) (exempting Navy's cost estimates for port locations), with Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 39 (D.C. Cir. 2002) (disallowing exemption for nesting-site locations of pygmy owl); Petroleum Info. Corp., 976 F.2d at 1438 (disallowing exemption for pre-release version of database created to facilitate access to public-land information already publicly available).

Like the material withheld in these cases, the factual information sought by Edmonds bears upon the judgment of DOI employees with respect to development of the benefits-sharing EIS.  Several documents (VI 70, 145, 156, 188, 191, 213, 219, 273)[3] contain information that was considered for inclusion in the EIS but ultimately did not make its way into the DEIS.  Edmonds argues that this information is factual because it describes ongoing NPS research, summarizes public comments relevant to the EIS, and in one instance comprises a request for information about park research and a partial answer.  See VI 70, 156, 188, 191, 213.  Other information

---

[3]The Court will use the following convention when referring to documents listed in DOI's revised Vaughn index: (VI #)

requested by Edmonds consists of data analysis and explanations of methodology.  See VI 145, 219, 273.  DOI asserts that this material is privileged because its release would reveal the agency's judgment in selecting the contents of the EIS.

The Court agrees with DOI that the disclosure of material considered for but not utilized in the EIS and DEIS would reveal the editorial judgment of NPS staff.  See Russell, 682 F. 2d at 1049; Lead Indus. Ass'n v. Occupational Safety & Health Admin., 610 F.2d 70, 85-86 (2d Cir. 1979) (holding that disclosure of draft information not appearing in final version of document was improper because "omission reveals an agency deliberative process: for some reason, the agency decided not to rely on that fact or argument after having been invited to do so").  Furthermore, the quality of policy documents like the DEIS would suffer if agency employees are hesitant to suggest ideas and information for preliminary drafts out of fear that their rejected suggestions could eventually be disclosed.  These concerns apply equally to narrative and non-narrative forms of information.  The analysis of research-permit data performed by NPS staff represents an exercise of judgment, as the agency's decision not to adopt the proposed methodologies makes clear.  The Court therefore finds that the contested information in documents 70, 145, 156, 188, 191, 213, 219, and 273 is exempt from disclosure under FOIA.

The deliberative process privilege also applies to information e-mailed between DOI employees that the e-mail author considered relevant to the development of the EIS.  The information in these discussions includes employee opinions on the evolution of NPS policies (VI 141), employee views on a researcher who began but did not complete a research-permit application (VI 162), descriptions of past scientific projects (VI 171, 274), employee observations and data concerning research permits (VI 205), lists of sources regarding specimen

repositories (VI 206), and summaries of research data (VI 149, 274).[4]  Release of this

information would be inappropriate because the documents represent the individual views of

their authors rather than that of the agency in connection with the development of the EIS.  See

Coastal States Gas Corp., 617 F.2d at 866 ("Documents which are protected by the privilege are

those which would inaccurately reflect . . . the views of the agency, suggesting as agency position

that which is as yet only a personal position.").  The Court therefore finds that the contested

material in documents 141, 149, 162, 171, 205, 206, and 274 is exempt from disclosure.

Withheld or redacted information that relates to the mechanics of the deliberative process

itself is also exempt from disclosure under the deliberative process privilege.  The withheld

information falling under this category includes a list of tasks related to preparation of the EIS

along with names of the NPS employees assigned to each task (VI 39), an EIS team member's

report of his team's progress in developing a section of the EIS (VI 76), and e-mails suggesting

the next task in the EIS drafting process (VI 126, 127).  Edmonds argues that these progress

reports and task lists should be released because they are purely procedural in nature.  The Court

does not agree that the distinction between procedural and substantive material is dispositive

here.  The release of "procedural" information like task lists and progress reports would reveal

DOI decisions concerning the amount of time and resources allotted to the development of

particular sections of the EIS.  The Institute's request is analogous to the request made by the

plaintiffs in Wolfe v. Dep't of Health & Human Servs., which asked for the release of records

essentially comprising a progress report on regulatory actions that had been proposed by the

FDA.  See 839 F.2d at 771.  The D.C. Circuit, acting en banc, held that the deliberative process

---

[4]Documents 162 and 205 were reviewed by the Court in camera.

privilege protected against production of the records, further noting that "[w]e know of no case in which a court has used the fact/opinion distinction to support disclosure of facts about the inner workings of the deliberative process itself."  Id. at 774.  Because the release of this information would negatively impact the integrity of DOI's deliberative process, the Court finds that the contested information in documents 39, 76, 126, and 127 is exempt from disclosure.

In summary, the Court finds that the withheld and redacted information in all nineteen of the disputed documents is protected from disclosure by the deliberative-process privilege.  The Institute's motion for summary judgment on this claim will therefore be denied, and DOI's motion for summary judgment will be granted.

**2.    Is Edmonds entitled to a fee waiver for its August 2005 FOIA request?**

DOI has the authority under FOIA to promulgate a schedule of fees covering the reasonable standard cost of processing document requests.  5 U.S.C. § 552(a)(4)(A)(ii); 43 C.F.R. §§ 2.16-.18, App. C (2006) (DOI fee schedule).  These fees must be waived or reduced if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  § 552(a)(4)(A)(iii).  By enacting this statutory language, Congress intended FOIA's fee-waiver provision to be "'liberally construed in favor of waivers for noncommercial requesters.'" Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (quoting 132 Cong. Rec. 27,190 (1986) (statement of Sen. Leahy)).  Nonetheless, the requester bears the burden of satisfying the public-interest standard.  E.g., Larson v. CIA, 843 F.2d 1481, 1483 (D.C. Cir. 1988) (per curiam).  Fee-waiver requests therefore "must be made with reasonable specificity," and must be "based on more than

conclusory allegations." <u>Rossotti</u>, 326 F.3d at 1312 (internal quotation marks omitted).

Edmonds initially supported its fee-waiver request solely with a reference to its October 2002 FOIA Request.  <u>See</u> August 2005 FOIA Request.  In the 2002 request, Edmonds offered the following justification for a fee waiver:

> The Edmonds Institute is a 501(c)(3) non-profit organization which provides educational information to the public concerning the use of microbiological resources, including the use of such materials taken from public lands.  In addition, the organization publishes information concerning recent developments in the area of biodiversity, the status of enforcement of federal laws concerning biodiversity, and provides the general public with information concerning all aspects of existing and new microbiological resource programs.  Therefore, the data that will be supplied by this FOIA request is necessary to the group's organizational function.
>
> Furthermore, the response to this request will give the public substantial, new information concerning the functions undertaken by the DOI and its agency subdivisions.  The use of this information will help the Edmonds Institute, a non-profit organization, further its function as disseminators of information concerning the status of current biodiversity issues.

October 2002 FOIA Request at 5-6.

Edmonds expanded upon this justification in its September 2005 Waiver Request Letter. The letter stated that disclosure of the requested documents would assist the public in evaluating both DOI's compliance with the district court order in <u>Edmonds Inst. v. Babbitt</u>, 42 F. Supp. 2d 1 (D.D.C. 1999) (ordering NEPA review of benefits-sharing agreement between Yellowstone National Park and Diversa Corporation), and the status of NEPA review for benefits-sharing agreements more generally.  September 2005 Waiver Request Letter at 1.  Edmonds also stated that it had

> demonstrated its expertise in evaluating the types of records and documents requested on this subject by its active participation and involvement in numerous international Conventions on Biodiversity benefit sharing programs attended by staff from the National Park Service, and by its recent publication of a book entitled "The Catch:

Perspectives On Benefit Sharing," distributed at the Ad Hoc Open Ended Working Group on Access & Benefit Sharing held in Bangkok, Thailand earlier this year.

Id. at 2.

DOI subsequently denied the Institute's fee-waiver request because it determined that disclosure would not likely contribute significantly to public understanding of government operations and activities.[5]  Cooke Decl. ¶ 5; Waiver Denial Letter at 2-3.  As part of its determination, DOI considered whether Edmonds had the "ability and intention to disseminate the information to the general public, including how and to whom the requester intends to disseminate the information and the method of using the information to contribute to public understanding."  Waiver Denial Letter at 2; see also 43 C.F.R. Pt. 2, App. D. (b)(2)(iv) (DOI regulations).[6]  In particular, DOI reviewed the Institute's website and its book, The Catch.  With respect to the website, DOI stated that the Institute's failure to post a copy of the district court opinion in Edmonds Inst. v. Babbitt granting defendants' motion for summary judgment, see 93 F. Supp. 2d 63 (D.D.C. 2000), was misleading to the public and also noted that the most recent

_____

[5] DOI did find that the request fulfilled the first and last fee-waiver factors specified by DOI regulations, i.e., that the documents concern the operations of government and disclosure would not further the Institute's commercial interests.  See Waiver Denial Letter at 2; see also 43 C.F.R. Pt. 2, App. D (providing the following criteria for DOI fee-waiver determinations: whether (1) records concern operations and activities of Government; (2) disclosure will likely contribute to public understanding of those operations and activities; (3) that contribution will be significant; and (4) disclosure is primarily in requester's commercial interest).

[6] Under this Circuit's precedent, a court is not bound by DOI's interpretation of the FOIA fee-waiver provision.  See, e.g., Tax Analysts v. IRS, 117 F.3d 607, 613 (D.C. Cir. 1997) ("It is true that we will not defer to an agency's view of FOIA's meaning. . . . The meaning of FOIA should be the same no matter which agency is asked to produce its records." (citations omitted)); cf. Rossotti, 326 F.3d at 1313 ("[W]e emphasize that we owe no particular deference to the IRS's interpretation of FOIA['s fee-waiver statute].").  But see Judicial Watch, Inc. v. Dep't of Justice, 365 F.3d 1108, 1126 (D.C. Cir. 2004) (stating that, for fee-waiver request to be in public interest, four criteria listed in DOJ regulations must be satisfied).

material on the website was more than six years old.  Waiver Denial Letter at 2-3.  As for The Catch, DOI questioned the book's quality and availability, and observed that it did not demonstrate use of materials disclosed in response to the Institute's three previous FOIA requests.  Waiver Denial Letter at 2.

Edmonds administratively appealed the fee-waiver denial.  See Letter Appealing Waiver Denial.  On appeal, Edmonds disagreed with DOI's description of its website, stating that it had made "a number of very recent publications and postings available."  Id. at 3.  The Institute also explained that The Catch is provided free of charge at conferences and on the Institute's website.  Id.  Finally, Edmonds submitted ten letters of support from other non-profit organizations that laud Edmonds as a source of valuable information with respect to benefits-sharing agreements.[7]  See id. at 1-2.  Many of these letters refer to the Institute's e-mail alerts, publications, webpage, and workshop and conference participation as sources of this information.  See Letter Appealing Waiver Denial at 1-2 & Exs. F through K.

The information Edmonds submitted to DOI in support of its request is sufficient to entitle the Institute to a fee waiver.  The Institute's statement in the October 2002 FOIA request, reprinted in its entirety above, represents the type of overly general, conclusory justification that does not support a fee waiver.  See Larson, 843 F.2d at 1483.  Edmonds did, however, provide DOI with reasonably specific information in its September 2005 waiver request letter and in its administrative appeal concerning the various means by which it disseminates information to the

_____

[7] DOI argues that the meaning of "public" for purposes of the fee-waiver provision does not include members of the international community.  Def.'s Reply Supp. Renewed Mot. Summ. J. at 16 n.5.  The Court need not address this issue because DOI does not dispute that the "public" does include organizations based in the United States, such as the three U.S.-based organizations whose letters were presented to the agency.  See Letter Appealing Waiver Denial Exs. D, F & G.

public.  See September 2005 Waiver Request Letter; Letter Appealing Waiver Denial.  Such

"reasonable specificity" is "all that FOIA requires."  Rossotti, 326 F.3d at 1313.  Compare id. at

1314 (finding public-interest requirement satisfied by description of nine ways in which Judicial

Watch communicates information to public), with Larson, 843 F.2d at 1483 (denying waiver

request that "failed to identify the newspaper company to which [the requester] intended to

release the requested information, his purpose for seeking the requested material, or his

professional or personal contacts with any major newspaper companies").  Furthermore, the

Institute's failure to state affirmatively that it intended to use the above-described means to

disseminate the newly requested information is not fatal to its fee-waiver request.  See Rossotti,

326 F.3d at 1314 ("Judicial Watch might have added that it will use these methods to publicize

any information it obtains from this request, but the government points to nothing in FOIA, the

[agency] regulation, or our case law requiring such pointless specificity.").

    The Court finds unpersuasive DOI's arguments on summary judgment as to why

Edmonds has not shown an ability and intent to distribute the requested information.  DOI notes

that Edmonds failed to demonstrate "that is possesses the necessary qualifications or expertise to

analyze, synthesize, and effectively convey the requested information to the public in any way."

Def.'s Mem. Supp. Renewed Mot. Summ. J. at 25.  The Court declines to evaluate the quality of

Edmonds's scholarship or to specify a minimum level of expertise required to obtain a fee

waiver.  Doing so is unnecessary because Edmonds has demonstrated its ability to convey the

information to the public by stating in reasonably "detailed and non-conclusory terms--again, all

that FOIA requires--exactly how and to whom it will disseminate the information it receives."

Rossotti, 326 F.3d at 1314.

DOI apparently would also require Edmonds to demonstrate how it has used material disclosed in response to its previous FOIA requests.  See Def.'s Mem. Supp. Renewed Mot. Summ. J. at 26.  While evidence describing a requester's past use of FOIA-disclosed documents can be relevant to a fee-waiver determination, Edmonds is under no statutory or regulatory obligation to provide that evidence in its waiver request.  Instead, applications for fee waivers are considered on a case-by-case basis, see Judicial Watch, Inc. v. U.S. Dep't of Justice, 185 F. Supp. 2d 54, 60 (D.D.C. 2002), with respect to whether the *newly requested* information "is likely to contribute significantly to public understanding," § 552(a)(4)(A)(iii).  DOI's own regulations stress that "[e]ach fee waiver request is judged on its own merit" and include a list of detailed "fee waiver criteria" that pertain exclusively to the future use of information requested in the current FOIA request.  43 C.F.R. Pt. 2, App. D.  Therefore, the absence of evidence demonstrating exactly how Edmonds used the previously-released information does not provide a justification to deny its otherwise sufficient fee-waiver request.

The Institute's renewed motion for summary judgment with respect to the fee-waiver claim will therefore be granted, and DOI's renewed motion for summary judgment will be denied.

## CONCLUSION

For the foregoing reasons, and upon consideration of the entire record, the Court will grant in part and deny in part the respective renewed motions for summary judgment filed by Edmonds and DOI.  A separate order has been issued herewith.

_____/s/ John D. Bates_____
JOHN D. BATES
United States District Judge

Dated:   ___October 30, 2006___